The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. May it please the Court, my name is Ben Osorio and I represent the petitioner in this case, Mr. Gustavo Cucalon. The primary issue of this case, Your Honors, is whether Virginia Code 18.2248D is divisible to the specific identity of the chemical substance, whether those chemical substances are mere means of committing the offense. Our position is fairly simple, Your Honors. The elements are what the statute says it is. And the statute, when referring to the nature and type of substances, specifically says a controlled substance classified in Schedule I or Schedule II. I first want to point out that the government in this case has the burden, Your Honor, and I think that that is a point that has been ignored successively by both the Immigration Court and the Board of Immigration Appeals in this case. That is the government's burden to show by clear and convincing evidence a standard that the Supreme Court has hailed to be near beyond a reasonable doubt. In that case, Your Honor, the facts, the record of this case do not lend support to the decisions that have taken place thus far. Turning to the divisibility analysis, Mathis specifically instructs us to first look at the statute. As I've already indicated, Your Honor, we believe the statute supports our position. Also, the differentiation within the different subsections of the statute that point to Virginia having identified sentencing alternatives, also, as indicated in Mathis, lend support that those different subsections would then be the specific elements of the offense. And in those subsections, they reference the different schedules. But the Virginia courts have made very clear that these are elements. The identity of the drug involved is an element of the crime. So how do you account for that? Both the Court of Appeals and the Supreme Court of Virginia have been pretty clear about that. So in both, I think that Your Honor is referring to both Sierra and Cyprus, the Virginia Court of Appeals in Sierra specifically refers to type of offense. Our reading of that then would be that the type of offense would then be the classification of Schedule I or Schedule II. I think using sort of the prototypical example that we get in DeConn. I'm sorry, say that one more time? That the type of drug would be Schedule I or Schedule II. Refers to the schedule, not the type. Not the actual identity. Not the actual, so not cocaine or methamphetamine, which we naturally think of as being the type of drug. But colloquially, when you say the type of drug, you don't think of the schedule the drug is in. Well, I would disagree with that, Your Honor. I would say that when we think colloquially about type of drug, we would say stimulant, steroid, opioid, and then those different specific identities. But I think that the Supreme Court helps us out. If you go and look at both DeConn and Mathis, they specifically lay out this example of a deadly weapon. Right. And then they say, OK, the different means of deadly weapons would be a gun, a bat, a bladed weapon. So then we would say that a gun is a type of deadly weapon. Just like here, we would say Schedule I or Schedule II is a type of controlled substance in Virginia. Right. But the Supreme Court said in Cypress v. Commonwealth, the nature and amount of the confiscated substance were elements of the charged offenses. I mean, that's pretty clear. How do you get around that? I agree if you think that nature means the identity, the specific identity. And sort of going back to my point here, we would say in the gun, the bladed weapon example that I was using from DeConn and Mathis, Your Honor, that the identity of the gun would then be a Glock 9 millimeter. That's the specific identity. And here, I think Sierra Lynn support that when they're talking about nature, especially given that Sierra is discussing the mens rea context, nature means whether it's illicit or not. Nature means whether it's controlled or not. Right. But I'm talking about the language from Cypress. And again, Your Honor, our position is that you still have to prove means in a case. And I think that there's a lot of confusion about that. So yes, do we think that the state would still have to prove that it's one of these drugs? Yes. We don't doubt that it would have to prove that it's something that falls within that list of classification. But that's true in any type of case. If I was having to prove possession of a felon in possession of a firearm, I would still have to prove that there was some type, some specific identity of a drug, of a gun or weapon that matched that definition for whatever the Virginia definition of that offense would be. And so, I think that Sierra, again, when it's discussing nature and character, supports  I'm not sure this matters, but you don't necessarily, in a 922G context, you only have to show the specific identity of the gun in order to establish the interstate nexus, right? That's how we typically establish interstate nexus is by showing where the gun was manufactured. But absent that, I don't think there's any requirement in the 922G context that you identify the specific gun. So, if you see, for example, a video with a person holding a gun, that video of holding the gun, even without the specific identity of the gun, could be sufficient under 924C. I'm not sure why, I'm not, maybe that doesn't matter here, but I'm not sure that premise is correct. So, I actually, I'm happy to go to 922, Your Honor, because I'm very familiar with both the Virginia firearm definition, because obviously we meet the aggravated felony definition a lot. So, Virginia has found firearms to include a number of different types of things that the federal government does not classify. And so, immigration courts regularly look at this and say, okay, does the Virginia statute include an antique firearm as a means of committing this offense? Does the Virginia statute include tasers or flare guns that don't meet the ATF definition as an offense? And those are listed in the Virginia statute as being definitions that meet the Virginia firearm. But we would all agree that that, as an aggravated felony firearm offense, would not qualify under federal circumstances. So, I think, again, if we're going to compare firearms to drugs, why would we treat drugs differently when we would all agree that my example would not qualify as an aggravated felony firearms offense? I mean, there's a number of different statutes where we get exhaustive lists in them, including the Iowa statute in Mathis, Your Honor, and that statute specifically referred to structures buildings or an air, water, or land vehicle. And so, that's an exhaustive list of things that could end up completing that offense. But the Supreme Court said, no, those are means of committing the offense, and therefore overbroad. So, you know, our position, again, is if you've got a statute in the Iowa case before the Supreme Court where they list all the different ways of completing the offense, why would drugs be treated in a different fashion? Okay, let me ask you a question, if I could, on how, because you obviously have a lot of experience in this area, how do you account for the fact that the BIA handled the analysis of controlled substance offense using the modified categorical approach, but then when it talked about the drug trafficking offense, it used the categorical approach? How do you account for the fact, it's almost like two different people heard the case and applied the analysis. How do you account for that? Is this a problem in our case? Well, one, I have a hard time accounting for a lot of things the Board does these days, Your Honor. No, I understand that, but in this case, it seems anomalous here. So, I agree. I mean, the Board is doing everything it can to find him both convicted of a controlled substance offense by using the modified approach, but then also finding him an aggravated felon by using the overarching categorical approach without dividing it into the modified. But I think, at the very least, even if this Court were to decide that the modified should be utilized in 248D, that we win on the mens rea, and this cannot be an aggravated felony. Because, as Sierra points out, the Virginia mens rea is, he has to know that it's a controlled substance in Virginia. Well, everybody in this case agrees that the Virginia controlled substance list is overbroad to the Federal definition, so at the very least, you know, it would be impossible for him to have the mens rea to complete the Federal drug trafficking portion, and it could not, you know, there's no argument given that this is under an accommodation, that there's a commercial element here, and that this is some type of illicit trafficking offense. So, given that, we think, at the very least, this Court should find that it's not an aggravated felony and remand. I understand that the modified categorical on the specific identity is more of a complicated issue, especially in light of, you know, the circuit courts have gone all over the place on this. You know, one thing when I look at sort of the different circuit court decisions that go against us is this double jeopardy analysis. And there's this, you know, can I put, you know, can I have a bag of heroin in one pocket and a bag of cocaine in the other, and can I be charged with two separate offenses? I understand the attraction to try to engage in a double jeopardy analysis here, but here's the problem. They're trying to use elements in a different way that we would think of them in sort of the categorical approach. Nobody would say, again, going back to the Iowa statute in Mathis, if six jurors, let's say that there's a houseboat. I break into a houseboat, right? If six jurors think it's a house and six jurors think it's a boat, under the Iowa statute, they can convict. But we're talking about a single structure, all right? We're not talking about two different structures. If I broke into Judge Keenan's house and then I broke into Judge Keenan's boat, you know, even though those, both of those would be different means of completing defense, everybody would agree that I could be charged with two counts. So I think that there's some real confusion here about how to deal with that, especially in the controlled substance context. I think that obviously I would take the position of Harbin and Najera Rodriguez that if there's a single... Can I shift since your light's on? Just, I want to ask a question about the isomer argument. Yes, sir. Maybe because I was a biology major in undergrad, like this was sort of of interest to me, but I got a threshold question before we get into sort of the various structures of organic chemistry. If the argument was not raised on appeal to the BIA, which I think is correct, and was only raised in a motion to reconsider, the BIA says, we're not going to consider this isomer argument because it wasn't raised on appeal. It was only raised in a motion for reconsideration. Aren't we now precluded from reviewing that isomer argument in essence de novo, right? The BIA reasonably found that the failure to raise it on appeal waived the argument, maybe forfeited the argument. Without worrying about the distinction between those two, they found it forfeited. How do we now look at it anew? I mean, if this was a district court decision and it wasn't raised before the district court, the district court rejected your argument, and then you filed a motion to reconsider before the district court, raising a brand new argument, not yet made before, right? I mean, I think we would uniformly agree that that argument is waived because it wasn't raised in a timely manner. Why is that not also true for the isomer argument? I understand that's not true for the other arguments, but just talking about that one argument. Your Honor, I would say that we have been consistently arguing that this is not an aggravated felony drug trafficking offense, that this is also not a controlled substance offense. I don't think we're precluded from making variations of the same argument. This is essentially the same argument. It's a means of the argument? Right. And that's great. I'm joking. I think that's a great example of the argument. But you agree that the term isomer and the description that we talk about there didn't come into the briefing at all until the motion to reconsider? I believe that Mr. Stevens briefly mentioned it in his original appeal brief before the board, but I would say that I agree with Your Honor that it was not fully fleshed out to the extent that it was until our motion to reconsider. And so your argument is we can consider it because it's part of the broader argument that these are not controlled substance offenses? Right. And there's no question that this Court has de novo review of whether a statute meets the definition of an aggravated felony. Right. But only where it was exhausted before the administrative agency, right? We don't have de novo review where you failed to exhaust. I agree. But I... I understand your argument for why it comes in. Right. And in essence, maybe this is part of my problem as well, and I'll ask it and you can either tell me you don't know or tell me how I'm supposed to figure this out. Is there such a thing as a positional isomer of cocaine? I mean, I... My understanding... At least Google tells me that there are for methamphetamines. But does it even exist in the real world? I mean, A, does it exist at all? And then B, is it anything more than sort of, you know, some chemist's sort of imagination? Does it actually exist? So my understanding, Your Honor, and again, I have no background in this, but after reading the literature and reading, you know, the articles that we've cited to and sort of our explanation of the isomer position is that it does exist. And also that Virginia...  That is my understanding, Your Honor. And what... And based on what? I mean, this is sort of why I'm worried about it not being raised below, is because I, you know, I don't know the... Not every substance is susceptible to becoming... To having a positional isomer. And so what I'm trying to figure out is why do we believe cocaine does, and that seems like a particularly troubling thing for us to do as appellate court judges, given that there was no sort of development of that issue, because we've got to determine whether it's a reasonable probability that it would be prosecuted as a positional isomer. If there's no such thing as a positional isomer for cocaine, obviously there's no reasonable probability. And just quickly before my time runs out, Your Honor, I would say that, again, if we're looking at sort of statutory interpretation and construction here, your court would still have to decide on the isomers issue, given that it's in the statute. So if you have to determine, you know, if you're saying that it's... We adopt a modified approach, and that then we get to go refer to all these specific schedules that are never referenced in our actual statute of conviction, but we go to these schedules, then the isomers are listed in those different sections. So at some point you have to decide what level of specificity of granularity are we saying is the actual element, and I think that that's part of the problem. I mean, I think naturally we want to say controlled substance is the element, but obviously in this subsection it would be Schedule I or Schedule II. And I'd like to reserve the rest of my time, Your Honor. All right. Thank you. Ms. Lott? I don't want you to spend too much time on it, but just this last question just to make sure. The government's position is, given that it was not raised in the initial appeal, the isomer argument was found waived by the Board, and therefore we cannot review it. Thank you, Your Honor, and may it please the Court. Sorry. On behalf of the U.S. Attorney General. No, I'm sorry. Yes, starting with that question, yes, we do argue in our brief that it was not exhausted where it wasn't raised in the initial appeal. We're not relying solely on exhaustion, though. We also have an argument to the extent that that goes to statutory interpretation. But certainly, if there's any question about ... No, no, I understand you also dispute the merits, but first issue is waived. So on the second issue, on the merits, do you know whether cocaine is susceptible to being a positional isomer? So, Your Honor, we don't have a factual record about cocaine isomers in this case, and that goes to the lack of exhaustion of the issue. So as a factual matter ... You don't know either. I do not know. I do not ... That's not a critique. I'm not suggesting you should. I'm just ... Right, and I wouldn't want to speculate on any of that, but as far as the exhaustion question, certainly as far as ... It was not exhausted as a factual matter, so all of those underlying factual issues about cocaine's specific isomers, those have not been exhausted. Ms. Lott, since we have kickoff short questions here, let me throw in one, too. I don't understand. It really looks like two different people wrote this opinion. You have the modified categorical approach, same being applied to determine whether it's a controlled substance offense, and you have the categorical approach being applied to determine whether it's an aggravated felony for purposes of removal. What happens? Your Honor, I think that ... It's the same analysis. I mean, shouldn't it be the same analysis? There's a reason for my question, other than just curiosity, because if we agree with the position that the modified categorical approach resolves the issue, then can we then apply that, or do we have to, under the Chenery Doctrine, send it back to the agency for further analysis of the issue, where the BIA used the categorical approach? Your Honor, I think that the two separate ways that the case was analyzed, I think it's because of two separate requirements. One requirement is that, for both grounds of removability, the controlled substance violation and aggravated felony, both would require, as an element, a federally controlled substance. But for the aggravated felony ground, there's also going to be specific acts that are required, and that's distribution, in this case. And so, I think that the reason why one was analyzed under the modified categorical approach and the other one wasn't, was first, starting with the controlled substance requirement. This, the Virginia drug schedule is overbroad compared to the federal drug schedule in that it punishes more substances than in the federal schedule. Right. So then, how do you have a categorical match? So then, because the state statute is divisible by drug type. Right. But that gets to modified categorical analysis, not the categorical analysis used to analyze the aggravated felony part of the BIA opinion. Yes, I agree with that. And so, that... So, can we get to that, or do we have to send that back, the aggravated felony analysis under Chenery? No. The aggravated felony analysis does not need to be sent back, because that is, it's a separate requirement. So, separate from the drug, which the statute, the state statute is divisible by drug type, so then you can apply the modified categorical approach. But in the aggravated felony analysis, there's no need to break up the statute between the different acts, because any of them would qualify as distribution for aggravated felony purposes. So, the... Distribution of what? Of a controlled substance. But the controlled substance, we've got to divide, even in the aggravated felony. I think Judge Keenan's point is, even in aggravated felony context, the controlled substance definition is overbroad. So, we've got to look at the modified categorical for the controlled substance piece, but then the BIA says, yeah, I mean, in essence, the implication is modified categorical for drug, but categorical for the act, that is, the distribution. That's correct, because the, and the modified categorical analysis on the drug is common to both grounds of removal, so the analysis would carry over from the controlled substance ground to the aggravated felony. But they didn't rely on that. The BIA didn't, the IJ did, but the BIA didn't. Well, I think that it's this, sorry, Your Honor, let me refer back to the decision. And are you referring to the merits decision or the motion to reconsider decision, so I can make sure that I'm looking at the right decision? I'm referring to the analysis on which the BIA disposed of the case. So I'm looking at, I'm looking at the merits, the first board decision. Okay, why don't you give us a page in the appendix that you're talking about. So this is in the record at page 72. I think it starts, okay. Is it the joint appendix 72? Yes. The, okay, so, okay, so it goes from, yes, the modified categorical approach on the substance, and then it moves to analyzing whether it's properly categorized as an aggravated felony. Okay, so I think that, yeah, on 73, it talks about corresponds categorically, doesn't talk about modified at all. Right. So I think that, I agree, Your Honor, but I think that because the federally controlled substance is common to both grounds of removal, I think that, I mean, the board perhaps could have done a better job at being clearer that it was carrying over its analysis, but I think that that is what's happening. Well, it doesn't make it clear at all. It uses a different one, and what I'm saying is that if we agree with you on the modified categorical analysis as the IJ, and you seem to be advocating here, do we have to send it back under Chenery? I mean, you know, we've, our courts articulated a case law pretty strongly now that says that we can't go into the IJ's analysis if the BIA didn't rely on it, at least in part, and it seems to me that that's kind of what you're asking us to do, that because modified categorical you think applies, that you're saying we can go back into the IJ's decision and bootstrap the BIA's, which arguably misapplies the analysis. Well, Your Honor, I think that because the analysis on the controlled substance aspect is common to both grounds of removability, I don't think, I think that remand for the board to explicitly state that it was including its analysis on the drug into its aggravated felony analysis, I think that that would be, I think that that would be futile. I don't think that the court... Let me ask you a different version of that question. If we find that he's removable under the controlled substance subsection, do we even need to address whether it's an aggravated felony? Right? I mean, it seems like to me those are two alternative grounds for him to be removable. So he's either removable because he's a controlled substance offender or because he's an aggravated felon. If we find he's a controlled substance offender under the modified categorical, can't we just not address the alternative grounds for holding him removable? Well, Your Honor, the aggravated felony round is important because if he's removable as an aggravated felon, he's also ineligible for cancellation of removal. So there's an independent... Okay. So what you're saying, no, although there are alternative grounds, one of them comes with a kicker. And so we do have to address the aggravated felony piece. That's correct, Your Honor, because it implicates his eligibility for relief or not. For some... Okay. So, and then also another point about the aggravated felony analysis, so the board's over to the aggravated felony context. And like I said, Your Honor, I believe remand for any clarification on that would be futile. And I think that when it comes to these, to questions of state law interpretation, the court has no de novo review on that as well. But if I may go back to the controlled substance and the statute being divisible by drug type, I think that there, starting with the structure of the statute, that first off suggests that the specific drug is an element of the crime. The statute, the section under which the petitioner was convicted is limited to Schedule I and II drugs. That's an exhaustive list. It's not an illustrative list. And so that suggests that the drugs are alternative elements and not means. This is also similar to the Pennsylvania statute that was at issue in a Third Circuit decision called Henderson, which is cited in our brief. And that state statute also referred to Schedule I and II substances under Pennsylvania law. And there, the Third Circuit found that it was divisible by drug type. And then state case law also confirms that the specific substance is an element of the crime. Is it divisible by type or schedule? By the type. By the type. The petitioner argues that it's divisible by schedule, but there's really no support for that. You mean they couldn't, for example, in Virginia, you couldn't charge possession of a Schedule II drug and not say what it was? Well, Your Honor, the case law makes clear that the specific type of drug is an actus reis of the offense. And that's from Sierra. So the Supreme Court case in Cyprus. I'm talking Virginia law. I'm sorry? Virginia law. In Virginia, did they charge you with possession and distribution of a Schedule II drug, controlled drug? Well, the... Virginia. Yes. No, I understand, Your Honor, that in Virginia, the state case law requires that the specific type of drug, that that's an element of the offense. But the type of drug is Schedule II, for example. Do you mean they have to say that it was cocaine or crack cocaine? Well, Your Honor, the... Very specific question I'm asking you. You're saying that they have to charge the very, not what, specific drug. That's what you're saying on Virginia law? I'm saying that, yes, that the specific drug has to be proven. Oh, really? Well, I thought only that element comes, and that is you got to show at least you had something that's under that schedule. At trial, all we have to do is show that you had the drug you had was under that schedule. The... Is that not right? Is that not right? I'm sorry? You're charged with Schedule II distribution. At trial, they have to show at least what you had is a Schedule II, but not that... It could be another Schedule II, right? Your Honor, I don't think that that's what the Virginia case law says. What does it say? It says... About the... You looked at the jury instructions, right? You use a model jury instruction? What do you use? Well, the jury instructions, the model jury instructions do include the name of the drug is meant to be included. Also, looking at the... That's because the jury has to find that that one is a Schedule II drug, right? Well, Honor, again, going back to the Virginia cases, Sierra is a Virginia Court of Appeals case, and that specifically says that the... So, starting with the first part is that the specific type of substance found in a defendant's possession is an actus reus element the Commonwealth must prove pursuant to the statute. It goes on to say that a defendant who intentionally possesses a controlled substance aware of its nature and character as such bears the risk of incurring whatever punishment the Is that inconsistent with what I just said? It is. Ultimately, you can't show... For example, if you came to trial and what they had was something that's not a Schedule II, then you wouldn't have an element proven. But would it be any of those would do the trick? Your Honor, I just... So, you want to subdivide it all the way down to the point where it's air, so you get the match. But you can't have it both ways. Once you say it's divisible in a modified approach, then you have to go back to a categorical view of it. Then, a lot of people mistakenly think that, oh, because it's modified, then you can just get into everything. No. It's at a point of its highest level of divisibility. And, it seems to me, it's Schedule I and Schedule II. If it's divisible, assuming it's divisible, it's there, but not at a point where everything on the list becomes a separate element of... Matter of fact, not a separate... Different crimes. Well, Your Honor, I think that it does. So, the statute specifies Schedule I and II, and then it's further, it's divisible based on the drugs in those schedules. So, each drug would be an element. There's, for instance... Do you rely to any extent on how the indictment reads in Virginia? I'm sorry? Are you relying on how the indictments read in Virginia? Are you familiar with how they read? Your Honor, the indictment in this case does specify cocaine. Are you... Right, but are you aware generally of how indictments read with regard to controlled substance offenses under 18.2.248? As, generally speaking, I am not. I am familiar with the one in this case, and with the... But there's case law on that, isn't it? As to what needs to be contained in the indictment. Correct. There's Virginia case law on that, is there not? Yes, on the sufficiency of the pleading documents. Whether the indictment has to include the drug. Are you aware of case law on that in Virginia? I'm not aware. I'm not, off the top of my head, aware of that. But I would... I would like to... I would like to say that... So it refers to... First, the specific type of drug, and then specific substance. There's also... And I know that this is unpublished, but there is a fairly recent unpublished Virginia Court of Appeals decision called Howard that we discussed in our brief. And there, the defendant possessed one capsule containing two separate substances. And he was charged and convicted with possession of heroin and possession of fentanyl, based on those two substances being in the capsule. And the court stated that the specific drug is a unit of prosecution. And so, I think that that further shows that the specific drug is an element of the offense. And that overall, that the... I got a bag of drugs in my pocket, and it includes both heroin and cocaine. I can be charged with two separate counts of the violation. And that only works if the specific drug is an element. Otherwise, they would merge into a single offense, that being a Schedule I drug. That's correct, Your Honor. And in Howard, they were combined in a single capsule. What about Meds Reo argument? Do you want to address that? Sure. So, Petitioner raises that in the context of the aggravated felony, based on the Supreme Court decision in McFadden. And just backing up a bit, I would say that the elements of matching the state crime to the federal aggravated felony, that both require knowledge of the illicit nature of the substance. Both require certain acts, which would be distribution. And both require a federally controlled substance. So, when it comes to the Meds Reo, both require knowledge. So, McFadden discusses knowledge in terms of... A defendant would need knowledge that he was possessing a controlled substance, that was federally controlled. And Virginia has similar law in the state context. McFadden wasn't addressing an issue of when a state crime would be punishable as a felony under the federal law. We're talking about the difference in terms of trafficking. Under D, you're really not... There's no Meds Reo for trafficking at all. At no point, you're just accommodating. It's the cases where you said, look, you're next to the person, and you pass it on to somebody else as an accommodation. Well, Your Honor... That's not trafficking. Well, there's two separate routes for a drug crime to be an aggravated felony. One would be illicit trafficking, which would require a commercial dealing. And that's not what we have here. What's the other one? The other one is if it's punishable as a felony under the Controlled Substances Act. And so this type... The minimum conduct in this offense is possession with intent to give away. And that has been found to be punishable as a felony under the CSA. There's a case called U.S. v. Washington... So possession alone is enough? Well, possession with the intent to give it away. That would be... To share it. That would be... The thing with intent to distribute. And the distribution does not require a monetary transaction. That's right, Your Honor. So that's the aggravated felony route that was utilized in this case. I see that my time is almost up. No, it's up. Call the line. I'm sorry? Oh, I'm sorry. If the Court has no further questions. Okay, thank you. Thank you. Mr. Sorrell. You said the government can go modified, categorical, whichever way is suitable. Yes, Your Honor. I do want to touch briefly on the jury instructions that were referenced by the government in its argument, Your Honor. Although I'm not sure how helpful in this particular case the jury instructions are given that the preface of the jury instructions basically say, you know, these can be modified in whatever way necessary. They don't come from an appellate or a state Supreme Court. So they just attempt to be guidelines. Also, in our case, the petitioner took a plea. So there were no specific jury instructions in this case. However, if... I do think that they are informative in the way that they are laid out. If you look at the jury instructions, they're used in parentheses and brackets. Parentheses are utilized when there's specific information that's supposed to be put in there. The name of a person that was killed, the street where a DUI took place. In this case, the actual identity of the chemical substance. But when you look at the brackets, the brackets are referring to the elements. And when you look at this subsection, Your Honor, Schedule I and Schedule II are in brackets, but then the particular name of the substance is in parentheses. And that seems to be uniform throughout the jury model instructions. So even though I don't think that they're necessarily binding, I do think that they those must not be elements. There must be various means of committing the offense. And as Your Honor correctly pointed out, it is the normal practice in Virginia for people to be charged, possession of a Schedule I, Schedule II, and then pled out to possession of a Schedule III. And no substance is ever named. No, the indictments read, possession of a Schedule I substance to wit heroin. There's case law in Virginia, and I'm sorry I can't put my finger on it right now, but there's case law in Virginia that says that the purpose of the indictment is to provide notice. And the defendant has to know what he's charged with or she. And the defendant cannot be put in position of having to defend in a criminal case against a felony if the defendant does not know the substance with which the defendant is charged. And under the law in Virginia also, there's no automatic right to discovery of you can ask for a bill of particulars to an indictment, that the indictment must recite the drug. It recites both the schedule and it recites the substance. And if there's some late-breaking case law since I left the Virginia Supreme Court, please tell me, because I left in 2010, and maybe I've missed something. But the law was pretty firmly established on that point. So, Your Honor, I... Do you concede that it's divisible? To subsection D, Your Honor? Yes. To subsection D. You think it's divisible? Do you concede that? To subsection D. And then there it stops. So I would say that the operative element in this subsection, Your Honor, is Schedule I or Schedule II. That those are... Any Schedule I or Schedule II would be various means of committing this offense. Right. And you look at that categorically. And you wouldn't look at an indictment. You don't get to an indictment that's categorical at that point. Right? That's what I would agree, because we don't have the math at its peak in that case, Your Honor. But I do think... The Supreme Court has already spoken on a controlled substance case where we have an exhaustive list of controlled substances. You know, I know that divisibility wasn't the main issue in Malooly. But they looked at Malooly, which had similar jury instructions. Kansas had the fill-in-the-blank jury instructions that we have in the Virginia case. And they found that because the list of controlled substances was overbroad with respect to Kansas in comparison to the federal statutes, they found that that drug charge... I realize, again, it was a drug paraphernalia... Was overbroad. So I think if we're saying that in this section, because we've got a jury instruction that, you know, is a fill-in-the-blank, that then we make it divisible, I think that doesn't comport with the Supreme Court's analysis. And with regards to Judge Kenan's point, to wit, there will always be brute facts in an indictment. And I agree that the Virginia case law says that we have to put a person on notice. But if I'm charging somebody with murdering somebody, I would put that individual's name in the indictment. But that individual's name is not an element of the offense. The person, you know, the fact that they're a human being, is an element of the offense. And I think that that's the confusion sometimes when we're trying to compare state law with the guidance that we've gotten from the Supreme Court in Mathis. So, I agree. You know, are there going to be brute facts in certain indictments? Are there brute facts in our indictment? Yes, but those brute facts do not elevate them to being elements that must necessarily be found beyond a reasonable doubt. And I think that, again, the Court has to look very hard, obviously, at the logic of the decisions in the different sister circuit courts. But Harbin and Najira-Rodriguez are very persuasive on the unanimity of the jury point with regards to, you know, we have no indication in this case if it's clear, if one juror thinks that one particular controlled substance is one thing and the other thinks it's a different thing, does it matter if everybody agrees it's a Schedule I controlled substance? And I think that that answers the question for us, that given the clarity that the categorical approach requires, we just don't have it in this case, Your Honor. And I see that my time is up, Your Honor, so unless there are no more questions, I just want to thank the Court. Thank you, counsel, both. We'll come down to Greek Counsel to proceed to our final case for the day.
judges: Roger L. Gregory, Barbara Milano Keenan, Julius N. Richardson